STATE *ex rel.*

WILLIAM LEE MORRIS

*v.*

RICHARD MOHN, *Superintendent,*

*West Virginia Penitentiary*

(No. 14651)

Decided June 17, 1980.

*James T. McClure* for petitioner.

*Chauncey H. Browning,* Attorney General, *Joseph C. Cometti,* Assistant Attorney General, for respondent.

MILLER, JUSTICE:

This original proceeding in habeas corpus presents the question of whether a guilty plea is valid where it has been entered under a plea bargain agreement which contains a promise that is legally impossible to perform.

As reflected in an order entered July 23, 1979, William Lee Morris pled guilty to the crime of armed robbery and was sentenced by the Circuit Court of Fayette County to a definite term of imprisonment of ten years pursuant to the terms of a plea bargain agreement. Morris now challenges his sentence on the basis that the terms of the plea bargain agreement were not kept by the State. The principal contention is that there was a specific agreement that his ten-year sentence would run concurrently with a federal sentence under which he had been paroled, but to which he was still subject under federal law because his State armed robbery conviction constituted a federal parole violation.

The agreement as to concurrency of sentence is not seriously disputed. The prosecutor, at the time the guilty plea was taken before the court, stated:

> "Further, it is our agreement that that sentence be run concurrent with the federal sentence that the defendant is now under, the Youth Corrections Act."

The trial court, during the same hearing on the taking of the defendant's guilty plea, summarized this aspect of the plea.[1] After the guilty plea was entered, the court

---

[1] "THE COURT: Now, I'm going to take the terms of this plea bargaining agreement and make sure that everybody here understands what it is and that you, sir, understand what will be done and what won't be done and what can't be done with regard to the plea bargaining agreement.

"If you enter this plea of guilty, as I understand the plea bargaining agreement to the crime of armed robbery, then the Court will sentence you to a flat ten years in the State Penitentiary. The ten years will run concurrently with the federal sentence, which you're already serving. Do you understand that?

"Mr. MORRIS: Yes, Sir."

imposed a ten-year sentence to run concurrently with the federal sentence. However, the federal law, which is subsequently discussed herein, precluded concurrency. The result is that the defendant is serving his ten-year sentence at the State Penitentiary with the remainder of his federal sentence to be served when he is released by the State authorities. A federal detainer lodged against him at the time he was taken into State custody is still outstanding. The federal parole revocation hearing has not yet been held.

## I.

A recognized corollary to the principle that a guilty plea must be shown to have been intelligently and voluntarily entered is the rule that if the plea is based on a plea bargain which is not fulfilled or is unfulfillable, then the guilty plea cannot stand. This rule is set out in *Brady v. United States*, 397 U.S. 742, 755, 25 L. Ed. 2d 747, 760, 90 S.Ct. 1463, 1472 (1970) [quoting with approval from *Shelton v. United States*, 264 F.2d 571, 572 n. 2 (5th Cir. 1957)]:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)"

The Supreme Court in *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S.Ct. 495 (1971), also recognized that a guilty plea would be void even though the breach of the agreement was inadvertent.

Perhaps the leading case on the invalidity of a guilty plea brought about by a promise that was unfulfillable is *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973), where the court stated:

"Prosecutorial misrepresentations, though made in good faith, even to obtain a just, and here a mutually desired end, are not acceptable. Ignorance of the law is no excuse for the government, just as it avails not the defendant. Nor are contradictory or confusing statements of the law adequate. While we do not go so far as to say that minor and harmless slips by prosecutors will void a plea bargain, we hold that, at a minimum, a prosecutor may not, in exchange for a guilty plea, promise and/or make a recommendation of an illegal sentence."

See, e.g., Cohen v. United States, 593 F.2d 766 (6th Cir. 1979); United States v. Bowler, 585 F.2d 851 (7th Cir. 1978); United States v. Grandinetti, 564 F.2d 723 (5th Cir. 1977); Palermo v. Warden, 545 F.2d 286 (2d Cir. 1976); United States v. Brown, 500 F.2d 375 (4th Cir. 1974); Dublin v. United States, 388 A.2d 461 (D.C. App. 1978); Morrow v. State, 219 Kan. 442, 548 P.2d 727 (1976); Blaikie v. District Attorney, 378 N.E.2d 1368 (Mass. 1978); Gamble v. State, 604 P.2d 335 (Nev. 1979).

Our law comports with the principles of Correale. In State v. Sims, 162 W.Va. 212, 248 S.E.2d 834 (1978), we discussed at some length the law surrounding the taking of a guilty plea. We recognized that once a guilty plea is entered, the attack on its voluntariness must ordinarily implicate the competency of the defense counsel in advising the defendant as to the merits of his case and the other circumstances that surround the decision to enter the guilty plea. We stated in Syllabus Point 2:

"The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel."

It is clear that where a guilty plea is brought about by a promise that is legally impossible to fulfill, not only has the prosecution failed in its duty, but the defense counsel has rendered incompetent advice by not advis-

ing the defendant that portions of the plea bargain agreement are not legally fulfillable.[2]

Certainly, in most cases where a promise that is embodied in a plea bargain cannot be legally performed, it

[2] We recognize that Syllabus Point 3 of *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978), has limited applicability in this area of an unfulfillable plea bargain because the central focus is on the breach of the plea bargain agreement:

"Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently;(2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error."

In note 2 of *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834, 838, we said:

"The claim of incompetency of counsel implicates the Sixth Amendment right to effective assistance of counsel. A claim of incompetency of counsel is not the only basis on which a guilty plea can be undermined. It is a part of the more general rule that requires a guilty plea to be made voluntarily, upon proper advice and with a full understanding of the consequences. *Machibroda v. United States*, 368 U.S. 487, 493, 82, S.Ct. 510, 513, 7 L. Ed. 2d 473, 478 (1962); *Kercheval v. United States*, 274 U.S. 220, 223-24, 47 S.Ct. 582, 583, 71 L. Ed. 1009, 1012 (1927). We have long adhered to a similar rule. *Riley v. Ziegler*, W. Va., 241 S.E.2d 813 (1978); *Call v. McKenzie*, W. Va., 220 S.E.2d 665 (1975); *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971); *State ex rel. Post v. Boles*, 147 W. Va. 26, 124 S.E.2d 697 (1962), *cert. denied*, 371 U.S. 833, 83 S.Ct. 57, 9 L.Ed.[2d] 70; *In re Eplin*, 132 W. Va. 610, 53 S.E.2d 614 (1949); *State v. Stone*, 101 W. Va. 53, 131 S.E. 872 (1926); *State v. Hill*, 81 W. Va. 676, 95 S.E. 21 (1918); *Nicely v. Butcher*, 81 W. Va. 247, 94 S.E. 147 (1917); *State v. Stevenson*, 67 W. Va. 553, 68 S.E. 286 (1910).

"There are other grounds in which counsel may not be directly implicated. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Brooks v. Narick*, W.Va. 243 S.E.2d 841 (1978); *State ex rel. Clancy v. Coiner, supra; In re Eplin, supra; State v. Ward*, 112 W. Va. 552, 165 S.E. 803 (1932) (claim of broken plea bargain); *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Riley v. Ziegler, supra; Thomas v. Leverette*, W. Va., 239 S.E.2d 500 (1977) (inadequacy of record that plea was intelligently and voluntarily made); Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (claim of coerced plea); *Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941); *Nicely v. Butcher, supra* (claim plea induced by trickery)."

will causally affect the guilty plea, since the plea bargain agreement is the direct inducement for the guilty plea.

## II

The problem in the present case is the unfulfillable promise that the State sentence would run concurrently with the defendant's underlying federal sentence on which he was paroled. There had been a federal detainer for parole violation lodged against the defendant as a result of his commission of the State offense of armed robbery. Both the prosecutor and the defense attorney apparently believed that under the federal law, there would be an immediate revocation of the defendant's federal parole and that he would resume serving his federal sentence. Consequently, they thought that if the State sentence was ordered to run concurrently with the federal, then wherever the defendant was incarcerated the two sentences would be served concurrently.

This assumption, however, ignores the realities of the federal statute dealing with federal parole revocation, 18 U.S.C. § 4214, and the regulation of the United States Parole Commission, 28 C.F.R. § 2.47 (1977). In *Moody v. Daggett*, 429 U.S. 78, 85, 50 L. Ed. 2d 236, 242, 97 S.Ct. 274, 277 (1976), the Court reviewed early counterparts to these same statutory and regulatory provisions, but noted that the current provisions "incorporate the former procedures with few modifications."

*Moody* pointed out that under the federal law, a parolee who has committed a criminal offense while on parole may be subject to one of three dispositions. First, his parole, after appropriate hearing, can be revoked based on the new criminal offense and, if he is convicted on the new criminal offense, that sentence would run concurrently with the original sentence. The revocation of the parole activates "the remainder of the parolee's original federal sentence." [429 U.S. at 84, 50 L. Ed. 2d at 242, 97 S.Ct. at 277].

A second option is that the Parole Commission could decide, after investigation of the offense committed

while on parole, not to press for a parole revocation. In this event, the parolee remains on his federal parole, and if he is incarcerated for the offense committed while on parole, that sentence would run concurrently with the underlying federal sentence.

The third option, which is more relevant to the present case, is that where the parolee is convicted of a crime while on parole and is sentenced for that crime, the Parole Commission can defer parole revocation until he completes his new sentence. Upon the completion of the criminal sentence imposed for the crime committed while on parole, the Parole Commission may then proceed against him on his parole revocation and have him committed to serve the underlying term of the original sentence. In fact, it is the general policy of the Commission, as stated in 28 C.F.R. § 2.47(c), to postpone the imposition of the remaining underlying sentence, called the "violator term," until the parolee completes serving the term of the sentence imposed for the crime committed while he was on parole.[3]

*Moody* dealt with the constitutional question of whether a federal parole violator was entitled to a reasonably prompt hearing under procedural due process principles or whether the Parole Commission could defer the hearing until after the parolee had served the sentence imposed for the crime committed while on parole. The Supreme Court concluded that the delay authorized by the parole statute and regulations did not violate due process concepts. While *Moody* dealt with the parole statute prior to its amendments in 1976, it indicated that the amendments had not changed the basic tenor of the statute. Subsequent cases extend *Moody's* principle to the present statute and regulations of the Parole Commission and hold that it is entirely within the discretion

---

[3] 28 C.F.R. § 2.47(c) provides:

"It shall be the general policy of the Commission that, in the absence of substantial mitigating circumstances, the violator term of a parolee convicted of a new offense subsequent to release on parole shall run consecutively to any term imposed for the new offense."

of the Parole Commission as to whether concurrency will be extended. *Saulsbury v. United States*, 591 F.2d 1028 (5th Cir. 1979), *cert. denied,* ___ U.S. ___, 62 L. Ed. 2d 77, 100 S.Ct. 118-19; *Carpenter v. United States Parole Commission,* 475 F. Supp. 120 (C.D. Cal. 1979).

Emerging from the foregoing law is a general federal policy prohibiting concurrency of sentence where the federal parolee commits a state crime while on parole and is sentenced to imprisonment on the state crime. As in the present case, the Parole Commission lodges a warrant or detainer against the parolee, but does not proceed to execute it by way of holding a parole revocation hearing until the parolee completes his state term of imprisonment. Under the federal statutory scheme, he receives no credit on his underlying federal sentence while he is serving his state sentence. *Moody v. Daggett, supra; Carpenter v. U.S. Parole Commission, supra;* 28 C.F.R. § 2.52(c).[4] Thus, the federal parole revocation law militates against concurrency of sentence and ordinarily prevents the performance of a state commitment made in a plea bargain agreement which provides that the state sentence will run concurrently with the underlying federal sentence upon which the defendant was paroled.[5]

There can be little doubt that a guilty plea entered pursuant to a plea bargain which promises a concurrent sentence must be set aside where the promise of concurrency is not fulfilled. Courts have recognized that con-

---

[4] The pertinent part of 28 C.F.R. § 2.52(c) (2) is:

"If the parolee has been convicted of a new offense committed subsequent to his release of parole, which is punishable by a term of imprisonment, forfeiture of the time from the date of such release to the date of execution of the warrant shall be ordered, and such time shall not be credited to service of the sentence...."

[5] Under 28 C.F.R. § 2.47(c) [see Note 4, *supra*], the Parole Commission can reverse its general policy and find "Substantial mitigating circumstances" and permit the terms to run concurrently, in which event the State's promise of concurrency would be fulfilled. However, it is apparent from a legal standpoint that this option does not lie with the state, and any promise of concurrency is subject to attack on the grounds of an unfulfilled promise made in connection with a plea bargain.

currency of sentence is a valuable agreement which, if not performed as promised, results in the guilty plea and conviction being set aside. *Saulsbury v. United States, supra; United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977); *Lebosky v. Saxbe*, 508 F.2d 1047 (5th Cir. 1975); *Correale v. United States*, 479 F.2d 944 (1st Cir. 1973).

It is understandable that the prosecution and defense may not have been fully aware of the complicated federal law in this area. However, this does not diminish the fact that the defendant's guilty plea was entered based on a promise of concurrency that could not be fulfilled by the State. He is, therefore, entitled to have his guilty plea and his subsequent conviction based thereon voided. This does not, however, preclude the State from proceeding to prosecute the underlying criminal charge, since a discharge in habeas corpus does not ordinarily preclude a retrial. Syllabus Point 3, *Rhodes v. Leverette*, ____ W.Va. ____, 239 S.E.2d 136 (1977).[6]

The writ of habeas corpus is, therefore, awarded.

*Writ awarded.*

---

[6] It is possible that under *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S.Ct. 2141 (1978), if the writ of habeas corpus involved a matter of evidentiary insufficiency after trial, a retrial would be prohibited. *Cf. Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S.Ct. 2781 (1979) (federal habeas review of sufficiency of evidence supporting state conviction). *See also State ex rel. Betts v. Scott*, ____W.Va. ____, 267 S.E.2d 173 (June 4, 1980) (No. 14707); *State v Milam*, ____ W.Va. ____, 260 S.E.2d 295, 303 (1979); *State v. Frazier*, ____ W.Va. ____, 252 S.E.2d 39 (1979).